[Cite as *In re A.K.*, 2017-Ohio-8100.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | |
| A.K. | : | Appellate Case No. 27575 |
| | : | |
| | : | Trial Court Case No. 2013-3079 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of October, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Montgomery
County Prosecutor's Office, Appellate Division Montgomery County Courts Building, 301
West Third Street, 5th Floor, Dayton, Ohio 45402
        Attorney for Appellee, Montgomery County Children Services

KELLY M. SCHROEDER, Atty. Reg. No. 0080637, 1 S. Main Street, Suite 1800, Dayton,
Ohio 45402
        Attorney for Appellant-Mother

JAMES R. KIRKLAND, Atty. Reg. No. 009731, 20532 Success Lane, Dayton, Ohio 45458
        Attorney for Appellee-Aunt and Uncle

JAMES ARMSTRONG, 131 N. Ludlow Street, Suite 386, Dayton, Ohio 45402
        Guardian Ad Litem

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} K.K. ("Mother") appeals from the trial court's judgment entry awarding legal custody of her child, A.K., to the child's maternal aunt and uncle, C.J. and B.J. ("Aunt and Uncle").

{¶ 2} In her sole assignment of error, Mother contends the trial court abused its discretion in awarding legal custody to Aunt and Uncle and that such a disposition is not in the child's best interest.[1]

{¶ 3} The record reflects that appellee Montgomery County Children Services ("MCCS") became involved with Mother following a domestic-violence incident in which A.K.'s father picked up the six-month old child and threw her onto a couch several feet away. The incident resulted in an April 2013 dependency complaint being filed with regard to A.K. The complaint alleged, among other things, that Mother had a history of mental illness, cognitive delays, and engaging in "risky behaviors," including a string of relationships with violent men. The complaint noted that A.K.'s sibling previously had been adjudicated dependent in April 2012 and had been placed in the temporary custody of Aunt and Uncle. MCCS requested the same disposition for A.K.

{¶ 4} In July 2013, the trial court adjudicated A.K. dependent and awarded Aunt and Uncle temporary custody. Following two extensions of temporary custody, MCCS filed a February 2015 motion seeking an award of legal custody to Aunt and Uncle. In May 2015, Mother filed her own motion for legal custody with protective supervision. The matter proceeded to a two-day hearing before a magistrate in June and September 2015.

---

[1] A.K.'s father, J.W., is serving a prison sentence and will not be released until 2020. (Tr. Vol. I at 10-11). He did not participate in the proceedings below.

After hearing testimony from numerous witnesses, including the parties, social workers, case workers, the guardian ad litem, relatives, and others, the magistrate filed a December 9, 2015 decision with findings of fact and conclusions of law awarding legal custody to Aunt and Uncle. (Doc. # 38).

{¶ 5} Mother filed objections and supplemental objections to the magistrate's decision. (Doc. # 16, 37). The trial court overruled all objections in a lengthy April 3, 2017 decision and judgment. (Doc. #4). Therein, the trial court found, among other things, that an award of legal custody to Aunt and Uncle was in A.K.'s best interest. In reaching its conclusion, the trial court conducted an independent review, addressed the statutory best-interest factors, and made detailed findings, with citations to the record, for each of the pertinent factors. (*Id.* at 3-18). The trial court's decision confirmed Mother's residual parental rights,[2] which include "parenting time" or visitation. (*Id.* at 19).

{¶ 6} The essence of Mother's argument on appeal is that she has completed, or substantially completed, all of her case-plan objectives and that the statutory best-interest factors do not support awarding legal custody to Aunt and Uncle.

{¶ 7} Upon review, we find Mother's assignment of error to be unpersuasive. Because the trial court awarded Aunt and Uncle legal custody and did not terminate Mother's parental rights, the trial court's best-interest finding must be supported by the preponderance of the evidence rather than by clear and convincing evidence. *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 11-16. Moreover, we cannot reverse the trial court's award of legal custody to Aunt and Uncle absent an abuse of discretion. *In re*

---

[2] Mother's residual parental rights are set forth in a "Statement of Understanding," which was signed by Aunt and Uncle (Doc. # 40) and referenced by the trial court (Doc. # 4 at 19).

*M.O.*, 2d Dist. Montgomery No. 26457, 2015-Ohio-2430, ¶ 7. The phrase "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 8} Having reviewed the entire record, including the four-volume hearing transcript and related exhibits, we see no abuse of discretion in the trial court's decision. Mother's case-plan objectives included receiving a drug and alcohol assessment, having housing and income to meet basic needs, following through with mental-health services, taking parenting classes and implementing what she learned, engaging in domestic-violence education, signing releases, considering the child's interests when deciding with whom to live, and avoiding criminal activity. The trial court addressed the foregoing objectives in detail. (Doc. #4 at 12-17). It found that Mother had completed a number of them, that she was in compliance with others, and that a few were "ongoing."

{¶ 9} With regard to the "ongoing" objectives, the trial court noted that Mother had "relapsed" once by smoking marijuana and still had a couple more counseling sessions to complete. The trial court also characterized the housing objective as ongoing. Although Mother had adequate housing at the time of the hearing, it noted that, at times, she had been in arrears on her utilities and, at times, had been unable to pay her rent during the pendency of the case. The trial court found Mother's mental-health objective ongoing because she still was obtaining treatment. With regard to the parenting objective, the trial court observed that Mother had completed classes on three separate occasions. Nevertheless, it cited testimony from witnesses who opined that Mother's parenting ability remained inadequate, that she had shown little improvement in her parenting skills, and

that she had been unable to implement what she had been taught. With regard to the income objective, the trial court noted that Mother was working two or three jobs at the time of the hearing, primarily at a Steak-and-Shake restaurant. The trial court expressed concern about her ability consistently to earn enough to support herself and her child. Ultimately, the trial court determined that Mother's overall case plan remained "incomplete."

{¶ 10} On appeal, Mother asserts that she had completed, or nearly completed, all of her case-plan objectives. Mother notes that she took the requested parenting classes, participated in the requested counseling sessions, obtained gainful employment, and secured what the trial court itself characterized as adequate housing. In essence, Mother insists that she did everything MCCS asked of her and that she is entitled to have A.K. returned to her.

{¶ 11} The legal issue Mother has raised on appeal, however, concerns what disposition is in the best interest of A.K., not whether Mother substantially has completed her case-plan objectives. A parent's case-plan compliance is relevant, of course, to the best-interest determination, but it is not dispositive. *In re T.S.*, 2017-Ohio-482, __N.E.3d__, ¶ 13 (2d Dist.). Satisfying case-plan objectives is a means to an end, not an end unto itself. *Id.* at ¶ 12. The statutory best-interest factors may justify an award of legal custody to someone other than a parent, or even the termination of parental rights, despite a parent's completion of all case-plan objectives. *Id.* This is so because the best-interest factors encompass much more than the parent's case-plan objectives, and they do so from the perspective of the child's particular needs. In short, the focus of a best-interest analysis is on the child, not the parent.

{¶ 12} In some respects, the present case is illustrative of the foregoing principle. Although Mother had secured housing and employment prior to the legal-custody hearing, witnesses expressed ongoing concern about her ability to provide for A.K consistently. When considering the child's best interest, the trial court was not obligated to cease its analysis upon determining that Mother had checked the "housing" and "income" boxes on her case plan. The likelihood of longer-term stability in Mother's housing situation remained a relevant consideration, as did Mother's longer-term employment history and her actual earnings. Similarly, the trial court was not required to consider the "parenting" objective satisfied simply because mother took required classes. Rather, the trial court was entitled to consider the substantial evidence that Mother's parenting skills remain inadequate and that she has not demonstrated an ability to implement what she has been taught.

{¶ 13} Finally, with regard to the best-interest factors themselves, which is the central issue before us, we see no abuse of discretion in the trial court's analysis. In the context of a legal-custody motion, the pertinent best-interest factors are found in R.C. 3109.04(F)(1). *In re J.T.*, 2d Dist. Montgomery No. 27343, 2017-Ohio-1303, ¶ 11. As relevant here, they include (1) the parent's wishes, (2) the child's interaction with parents, siblings, and others, (3) the child's adjustment to home, school, and community, (4) the mental and physical health of all persons involved, and (5) the parent (or party) more likely to honor visitation.

{¶ 14} The trial court addressed each of the foregoing factors. It took into account Mother's desire to have custody of A.K. It also considered A.K.'s interaction with Mother, Aunt and Uncle, and A.K.'s sibling (who is in the legal custody of Aunt and Uncle). In a

lengthy and detailed analysis, the trial court acknowledged Mother's bond with A.K. It also considered A.K.'s strong bond with Aunt and Uncle, with whom the child had resided for nearly four years at the time of the trial court's ruling. In addition, the trial court considered A.K.'s "very close" and positive relationship with her sibling, who is near A.K.'s age. In this portion of its analysis, the trial court cited testimony regarding Mother remaining unaware of how to interact with A.K. properly and about shortcomings in Mother's parenting skills. The trial court also cited testimony that A.K. perceives Aunt as her mother and that Aunt and Uncle interact with A.K. "like a normal family." The trial court additionally considered A.K.'s adjustment to Aunt and Uncle's home, noting that the child is happy in the home, that her needs are being met, and that she is doing very well.

{¶ 15} The trial court next considered Mother's mental health. It noted that she has been diagnosed with various mental-health issues for which she takes medication and undergoes counseling. The trial court cited testimony that supports a finding that Mother's ongoing mental-health issues may negatively impact her ability to parent A.K.

{¶ 16} Finally, with regard to visitation, the trial court took into consideration Mother's concern that she would only be able to see A.K. on Aunt and Uncle's terms if Aunt and Uncle obtained legal custody. The trial court also considered Aunt's testimony that she would permit Mother to visit A.K. if Aunt and Uncle obtained legal custody.

{¶ 17} In addition to the foregoing analysis, the trial court proceeded to evaluate the evidence under the best-interest factors in R.C. 2151.414(D), which this court has found applicable to permanent-custody motions. *In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 50.[3] Although some factors under R.C. 2151.414(D) are the

---

[3] This court has recognized that considering the permanent-custody best-interest factors

same as those discussed above, additional factors addressed by the trial court included A.K.'s custodial history and the child's need for a legally secure placement.

{¶ 18} With regard to custodial history, the trial court noted that two extensions of temporary custody already had been granted and that A.K. had been in Aunt and Uncle's care since she was less than seven months old. The trial court then engaged in a lengthy analysis regarding A.K.'s need for a legally secure placement and the child's inability to be returned to Mother's care. The trial court addressed each of Mother's case-plan objectives and noted the existence of ongoing concerns with regard to some of them. In particular, the trial court addressed concerns about Mother's mental health, parenting ability, income adequacy, and long-term housing stability. The trial court also referenced the guardian ad litem's recommendation for Aunt and Uncle to receive legal custody of A.K. Upon review, we see no abuse of discretion in the trial court's analysis of the additional R.C. 2151.414(D) factors.

{¶ 19} Although Mother appears to have made some effort and progress, we concur in the guardian ad litem's assessment that her continuing struggle to manage her own life calls into question her ability to meet A.K.'s needs consistently.[4] Conversely, the

___

in a legal-custody case is not erroneous because R.C. 3109.04(F)(1) allows a trial court to consider "all relevant factors," which might include the additional best-interest factors found in R.C. 2151.414(D). *In re C.N.* at ¶ 51.

[4] During the hearing, Aunt opined that Mother still "can't even take care of herself." (Tr. Vol. II at 210). Aunt testified that Mother "frequently says that she's hungry, that she hasn't eaten in days[.]" (*Id.* at 212). At the time of the hearing, Mother lacked a driver's license or a car. (Tr. Vol. IV at 473). Although these things are not prerequisites to having custody of a child, they are relevant to Mother's circumstances. Mother herself admitted that she still relies on a mental-health case worker to transport her to food pantries, appointments, and other places she needs to go. (Tr. Vol. IV at 511). Mother elaborated: "She's there for whenever I need anything, as far as food, clothing, taking me to appointments, talking, a word of advice, anything that I need, really." (*Id.*). Mother testified that she expects her

child is happy and thriving in her home with Aunt and Uncle and her sibling. On the record before us, we cannot find that awarding legal custody to Aunt and Uncle, with Mother retaining visitation rights, was an abuse of the trial court's discretion or that such a disposition was not in the child's best interest. Accordingly, we overrule Mother's assignment of error.

{¶ 20} The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Alice B. Peters
Kelly M. Schroeder
James R. Kirkland
James S. Armstrong
J.W.
Hon. Anthony Capizzi

---

reliance on the case worker to continue. (*Id.* at 511).