[Cite as *In re T.L.W.*, 2019-Ohio-3118.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| | : | |
| | : | |
| IN RE T.L.W. and L.W. | : | Appellate Case No. 28363 |
| | : | |
| | : | Trial Court Case Nos. 2015-2394 |
| | : | 2015-2396 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

CHARLES W. SLICER, Atty. Reg. No. 0059927, 426 Patterson Road, Kettering, Ohio 45419
        Attorney for Mother

. . . . . . . . . . . . .

HALL, J.

{¶ 1} The Montgomery County Department of Job and Family Services, Children Services Division (MCCS), appeals from the trial court's judgment entry sustaining appellee Mother's objections to a magistrate's decision regarding the disposition of her two minor children, L.W. and T.W.

{¶ 2} MCCS advances four assignments of error. First, it contends the trial court erred in sustaining Mother's objection to the magistrate's decision awarding MCCS permanent custody of L.W. MCCS argues that the trial court improperly rejected the magistrate's decision "without conducting the statutorily required best interest analysis." Second, MCCS claims the trial court abused its discretion in rejecting the magistrate's decision awarding MCCS permanent custody of L.W. Third, MCCS asserts that the trial court abused its discretion in rejecting the magistrate's decision awarding legal custody of T.W. to Mother's cousin T.B.[1] Fourth, MCCS argues that the trial court erred in terminating the agency's temporary custody of L.W. and T.W. and returning legal custody to Mother "without conducting additional hearings."

{¶ 3} The record reflects that MCCS filed separate neglect and dependency complaints in April 2015 with regard to Mother's children, L.W. and T.W. At the time of the complaints, L.W. was two months old, and T.W. was 15 months old. The complaints alleged that Mother was unable to care for her children's basic needs as she lacked income and appropriate housing.[2] MCCS obtained interim temporary custody in May

---

[1] On appeal, MCCS refers to Mother's cousin as T.W.'s "maternal aunt." For purposes of our analysis herein, we will refer to her as "Mother's cousin," which is how she identified herself below. (Hearing Tr. at 56, 58).

[2] The father of L.W. and T.W. has been incarcerated at all relevant times and is not a party to this appeal.

2015. The following month, both children were adjudicated dependent. MCCS was granted temporary custody of L.W., and Mother's cousin was granted temporary custody of T.W. First and second extensions of temporary custody were granted in both cases. Thereafter, in March 2017, MCCS moved for permanent custody of L.W. and for legal custody of T.W. to be granted to Mother's cousin. In April 2017, Mother moved to have legal custody returned to her in both cases. The case proceeded to a January 2018 hearing before a magistrate. Based on the evidence presented, the magistrate awarded MCCS permanent custody of L.W. and awarded Mother's cousin legal custody of T.W. In separate March 8, 2018 decisions, the magistrate found (1) that L.W. had been in MCCS' temporary custody for 12 or more months of a consecutive 22-month period and that awarding the agency permanent custody was in the child's best interest and (2) that awarding Mother's cousin legal custody of T.W. was in the child's best interest.

{¶ 4} Mother filed objections and supplemental objections to both of the magistrate's decisions. Following briefing, the trial court resolved the objections in an April 19, 2019 decision and judgment entry. With regard to L.W., the trial court agreed with the magistrate's determination that the child had been in MCCS' temporary custody for 12 or more months of a consecutive 22-month period. However, the trial court rejected the magistrate's best-interest determination. Based on its own review of the record, the trial court found it in L.W.'s best interest to be reunited with Mother. As a result, the trial court sustained Mother's objection to the magistrate's decision, overruled MCCS' motion for permanent custody, and sustained Mother's motion for legal custody. With regard to T.W., the trial court again rejected the magistrate's best-interest determination and found it in the child's best interest to be reunited with Mother. Consequently, the trial court overruled

Mother's cousin's motion for legal custody and sustained Mother's motion for legal custody. The trial court also granted MCCS six months of protective supervision. This appeal by MCCS followed.

{¶ 5} In its first assignment of error, MCCS contends the trial court failed to conduct "the statutorily required best interest analysis" before denying its motion for permanent custody of L.W. MCCS notes that R.C. 2151.414(D)(1) obligated the trial court to "consider" all relevant factors, including those set forth in the statute, when determining whether an award of permanent custody to the agency was in L.W.'s best interest. MCCS also notes that while the trial court "need not specifically enumerate each of the R.C. 2151.414(D)(1) factors in its decision, 'there must be some indication on the record that all of the necessary factors were considered.' " *In re K.T.1*, 1st Dist. Hamilton Nos. C-170667, et al., 2018-Ohio-1381, ¶14, quoting *In re G.B.*, 10th Dist. Franklin No. 04AP-1024, 2005-Ohio-3141, ¶ 17. Here MCCS asserts that the trial court merely summarized the evidence as it pertained to each statutory best-interest factor. MCCS argues that this was insufficient, as a matter of law, to demonstrate that the trial court "considered" the best-interest factors as required by R.C. 2151.414(D)(1). MCCS argues that the trial court's analysis and holding did not mention the best-interest factors, focusing instead on other issues. Therefore, MCCS urges us to reverse the trial court's decision based on an error of law, namely a failure to "truly consider" the best interest of L.W.

{¶ 6} Upon review, we find MCCS' argument to be without merit. It is nearly impossible to read the trial court's opinion and conclude that it did not "consider" the best-interest factors under R.C. 2151.414(D)(1). Near the outset of its ruling (which was 22 single-spaced pages), the trial court stated that it would determine whether it was in the

best interest of L.W. to grant permanent custody to MCCS. (Montgomery C.P. No. 2015-2396, Doc. # 4 at 4).[3] The trial court then stated that it would consider all relevant factors, including those identified in R.C. 2151.414(D)(1). (*Id.*). Following that statement, the trial court devoted nine single-spaced pages to identifying each best-interest factor and detailing the evidence as it pertained to each factor. (*Id.* at 4-12). This exercise by the trial court, alone, persuades us that it satisfied its statutory responsibility to "consider" the best-interest factors. But the trial court did more. In the pages that followed, it explicitly engaged in a best-interest analysis. Among other things, it found that Mother substantially had completed her case-plan objectives. The trial court recognized that this fact was not dispositive but found it to be a relevant best-interest consideration. (*Id.* at 12-13). The trial court also specifically analyzed the best-interest factor in R.C. 2151.414(D)(1)(d) regarding L.W.'s need for a legally secure placement and whether it could be achieved without awarding permanent custody to MCCS. (*Id.* at 14). The trial court's analysis then took into consideration "the significant time the child has been in Agency custody and in the placement of the current foster family, as well as the relationship that the child and foster family have built." (*Id.* at 15).These considerations implicated at least two additional statutory best-interest factors. *See* R.C. 2151.414(D)(1)(a) and (c). Finally, the trial court explained that it was considering what would "best promote the care, protection, and mental and physical development" of L.W. (*Id.* at 16). This statement embodied the concerns underlying all of the best-interest factors.

---

[3] The trial court filed the same April 19, 2019 opinion under separate case numbers in LW.'s case and in T.W.'s case. For convenience, we will reference the trial court's decision as "Doc. # 4" in Montgomery C.P. No. 2015-2396 throughout this opinion. We note, however, that the same opinion exists as "Doc. # 5" in the companion case, Montgomery C.P. No. 2015-2394.

{¶ 7} Having reviewed the record, we find no support for MCCS' assertion that the trial court failed to "consider" the statutory best-interest factors or to conduct the required best-interest analysis.[4] Accordingly, the first assignment of error is overruled.

{¶ 8} In its second assignment of error, MCCS argues that trial court abused its discretion in sustaining Mother's objection to the magistrate's decision regarding the best interest of L.W. Specifically, MCCS claims the trial court disregarded overwhelming evidence that awarding the agency permanent custody was in the child's best interest.

{¶ 9} To obtain permanent custody and terminate Mother's parental rights, MCCS was required to establish by clear and convincing evidence that such a disposition was in L.W.'s best interest and that the child had been in the agency's temporary custody for at least 12 of the preceding 22 months. *In re J.N.*, 2d Dist. Montgomery No. 28247, 2019-Ohio-1800, ¶ 13. We apply an abuse-of-discretion standard to the trial court's resolution of the best-interest issue. *In re L.T.*, 2d Dist. Montgomery No. 26922, 2016-Ohio-605, ¶ 4. The phrase "abuse of discretion" implies a decision that is unreasonable, arbitrary, or unconscionable. *Id.* Therefore, we may not reverse the trial court's decision based on a mere difference of opinion or substitution of our judgment for that of the trial court. With these standards in mind, we see no abuse of discretion in the trial court's determination that awarding Mother legal custody of L.W. was in the child's best interest. As a result, the trial court did not err in declining to award MCCS permanent custody.

{¶ 10} In determining what is in the best interest of a child, a trial court must

---

[4] MCCS' real argument appears to be that the trial court analyzed the best-interest factors incorrectly, overemphasizing reunification, Mother's parental rights, and her case-plan progress. We will address these issues under MCCS' second assignment of error, which challenges the trial court's best-interest determination as an abuse of discretion.

consider all relevant factors, including, but not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child, including whether the child has been in the temporary custody of public or private children services agencies for 12 or more months; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. R.C. 2151.414(D).[5]

{¶ 11} In its decision, the trial court detailed the evidence as it pertained to each of the foregoing factors. (Doc. # 4 at 4-12). With regard to L.W.'s interaction and interrelationship with others, the trial court noted that the child was well bonded with a foster family that had cared for him since April 2015. The trial court also found that L.W. was bonded with Mother, who had maintained regular visits. The trial court noted that L.W. sometimes asked to stay with Mother after visits were completed. The trial court also recognized that the foster parents had treated L.W. for pink eye, reflux, and asthma. Additionally, the trial court noted that L.W. had undergone counseling for anxiety-related issues that manifested themselves while in the foster family's care. The trial court observed that L.W. had special "sensory" toys such as a trampoline, bean bags, and a blanket.

---

[5] The statute also instructs a trial court to consider "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." *See* R.C. 2151.414(D)(1)(e). The parties do not dispute the inapplicability of any of these additional factors here.

{¶ 12} As for L.W.'s wishes, the trial court noted that the child was only two years old at the time of the permanent custody hearing. As a result, the child's wishes had not been ascertained or explored. With regard to L.W.'s custodial history, the trial court recognized that L.W. had been under MCCS' care for 12 or more months of a consecutive 22-month period.

{¶ 13} The trial court then turned to L.W.'s need for a legally secure permanent placement and whether that type of placement could be achieved without granting MCCS permanent custody. The trial court devoted significant attention to this factor. It first noted that MCCS had become involved in the case based on an allegation of abuse that ultimately was not substantiated. In the course of its investigation, however, the agency developed concerns about Mother's housing and income. As a result, MCCS obtained temporary custody of Mother's children and a case plan was initiated. The case-plan objectives included (1) obtaining and maintaining suitable housing and income, (2) completing parenting/psychological evaluations and following recommendations, (3) completing anger management and parenting education classes, and (4) maintaining visitation.

{¶ 14} The trial court thoroughly reviewed the evidence pertaining to the foregoing objectives. It specifically noted a caseworker's testimony that Mother had maintained clean and suitable housing since March 2017, which was 10 months before the custody hearing. With regard to income, the trial court noted testimony that Mother had worked three different places but had not always verified her income. The trial court also noted, however, that the caseworker was unaware of any "gaps" in Mother's employment. The trial court then cited Mother's testimony that she was never unemployed and that she quit

one job because it was seasonal and switched from one home-health-care job to another one to obtain more consistent hours.

**{¶ 15}** With regard to parenting and psychological evaluations, the trial court noted that Mother had undergone two of them. The first was by Dr. Richard Bromberg in February 2016, and the second was by Dr. Daniel Hrinko in August 2017. Dr. Bromberg diagnosed various psychological disorders and made several recommendations, including drug testing, therapy, anger management, and parenting classes. Dr. Bromberg also opined that Mother lacked the ability to effectively parent her children consistent with their best interest at that time. Eighteen months later, however, Dr. Hrinko evaluated Mother and found that she exhibited no inappropriate behaviors. He noted that she had undergone some counseling and had made "significant progress." Dr. Hrinko found no evidence of any severe or significant "clinical syndromes" or of any "severe personality pathology." Dr. Hrinko also noted that Mother's clinical scales revealed no evidence of "any significant elevations that was to be associated with significant mental health or psychological problems." He further opined that the problems that brought Mother to MCCS' attention appeared to have been resolved. He recommended that Mother's children be returned to her and that she continue with mental-health counseling to assist her in coping with the challenges of independent parenting. In its decision, the trial court noted that MCCS did not dispute the fact that Mother had been attending counseling regularly. The trial court also noted that the agency had no concerns about any drug use by Mother.

**{¶ 16}** As for the requirement of anger management and parenting classes, the trial court noted that Mother had satisfied these case-plan objectives. Finally, with regard

to visitation, the trial court cited a caseworker's testimony that Mother's visitation had been consistent. The trial court referenced one disputed incident in December 2016 when Mother allegedly cursed at a caseworker and another incident that month when Mother returned the child with a dirty diaper and a swollen eye that appears to have been the result of a traffic accident involving Mother's car. Mother admitted the accident and explained that she did not report it to MCCS because she was "scared about being non-compliant."

{¶ 17} After reviewing the evidence related to the statutory best-interest factors, the trial court found that Mother substantially had completed her case-plan objectives. She had obtained and maintained suitable housing and employment. She had completed evaluations, undergone counseling, and visited L.W. consistently. Mother's substantial satisfaction of her case-plan objectives was particularly relevant to the best-interest factor found in R.C. 2151.414(D)(4), namely L.W.'s need for a legally secure placement and whether that type of placement could be achieved without a grant of permanent custody to MCCS. On that issue, the trial court highlighted Dr. Hrinko's most recent evaluation, which found no reason, from a mental-health standpoint, why Mother should not be reunited with her children. In fact, the trial court found that MCCS had agreed, as far back as September 2017, to have L.W. returned to Mother's legal custody before changing its mind based on a purported "lack of cooperation" by Mother at that time and her failure to verify income. The trial court found little evidence, however, of any real lack of cooperation on Mother's part.

{¶ 18} On the other hand, the trial court recognized that L.W. had been under MCCS' care for more than 12 months of a 22-month period and that the child had bonded

with the foster family. These observations by the trial court demonstrated its consideration of the best-interest factors found in R.C. 2151.414(D)(1) and (3). The only other potentially applicable factor, the wishes of the child, did not apply due to L.W.'s young age.

{¶ 19} Ultimately, the trial court concluded that MCCS "did not meet the burden of proof in showing clear and convincing evidence that permanent custody of the child is in the best interest of the child." (Doc. # 4 at 14). To the contrary, the trial court held: "The Court finds it to be in the child's best interest to be reunified with Mother as separating the child is not necessary for the child's welfare or in the interests of public safety. Further, the Court finds that Mother parenting her own child will best promote the care, protection and mental and physical development of the child as Mother has demonstrated her commitment and ability to do so safely and appropriately." (*Id.* at 16).

{¶ 20} On appeal, MCCS argues that the trial court overemphasized reunification, Mother's parental rights, and her case plan progress. MCCS asserts that the trial court abused its discretion by disregarding other issues such as L.W.'s "medical, social, and developmental needs." MCCS notes that L.W. had been diagnosed with pink eye, reflux, and asthma while in foster care and that the child used medications for asthma, including an inhaler and a nebulizer. MCCS also notes that L.W. underwent counseling to help with anxiety and dealing with new situations. MCCS suggests that Mother did not attend the counseling sessions and, in fact, had been unaware of the child's need for counseling. MCCS also argues that Mother had been unaware of L.W.'s "sensory dysfunction" or his need for "special toys" including soft pillows, bean bags, and a blanket. MCCS asserts that there is no evidence Mother will be able to administer the asthma medicine or

maintain L.W.'s behavioral therapy. MCCS also notes that Mother never brought these "special toys" to visits, suggesting that she may not have them.

{¶ 21} When reviewing the evidence as it related to the best-interest factors, however, the trial court recognized each of the foregoing issues. Although the trial court did not explicitly reference them in its analysis, it plainly was aware of them. The trial court reasonably may have believed that Mother, as a functional adult, could help L.W. use an inhaler, arrange his counseling sessions, and obtain any necessary "special toys" including pillows, bean bags, or a blanket. We note that the trial court granted MCCS six months of protective supervision, subject to a potential extension, during which the agency could assure itself that the child's needs were being met.

{¶ 22} MCCS further argues that L.W. had lived with the foster family for most of his life, whereas Mother had visited regularly but had not parented the child full-time for more than two years. MCCS also questions Mother's parenting skills and suggests that the record overwhelmingly supports permanent custody to the agency. MCCS questions whether Mother really had satisfied her case plan objectives. The agency notes that Mother had maintained her apartment for only nine months.[6] It also asserts that she lacked stable income at the time of the hearing because income from one employer was paid in cash and because Mother had not consistently verified income. Finally, MCCS asserts that Mother did not substantially complete her mental-health objective. MCCS notes that Mother had not yet completed the full 24 months of counseling recommended by Dr. Bromberg. The agency also suggests that Dr. Hrinko's subsequent evaluation was

---

[6] In her own testimony, Mother explained that she had another apartment prior to the current one. She voluntarily gave it up so she could obtain her present housing, which is a larger, two-bedroom apartment to accommodate her children. (Hearing Tr. at 156-158).

flawed and less reliable.

{¶ 23} In our view, the trial court reasonably found substantial compliance with the case-plan objectives. As set forth above, Mother had maintained suitable housing for many months prior to the hearing. Although she did fail to verify income at times, the record supports a finding that she never was unemployed and that she changed jobs only when she found a better one. Finally, as for the mental-health issue, the trial court acted within its discretion in relying on Dr. Hrinko's more recent evaluation.

{¶ 24} Notably, at the time of the custody hearing, MCCS caseworkers Brande Knight and Tawanda Thompson *admitted* that Mother had competed her case-plan objectives with the exception of income verification. (Hearing Tr. at 104, 126). When asked why MCCS did not believe Mother should be reunited with her children, Knight said nothing about L.W.'s medical or developmental needs. Nor did she reference Mother's mental health or any inadequacies with regard to Mother's housing or employment. Instead, she mentioned only "concerns about mother's history of stability" or "just general instability." (*Id.* at 105). But these non-specific concerns were mitigated by the trial court's decision to grant MCCS protective supervision for an extendable six-month period during which the agency could maintain contact with Mother and assure the well-being of her children.

{¶ 25} Based on our examination of the record, we see no abuse of discretion in the trial court's refusal to award MCCS permanent custody. The trial court thoughtfully reviewed the evidence and considered the appropriate statutory factors when determining that returning L.W. to Mother's legal custody was in the child's best interest. The trial court's resolution of the best-interest issue was supported by the record and was not

unreasonable, arbitrary, or unconscionable. Accordingly, the second assignment of error is overruled.

{¶ 26} In its third assignment of error, MCCS challenges the trial court's decision to grant Mother legal custody of T.W. The agency contends the trial court abused its discretion in not finding an award of legal custody to Mother's cousin to be in the child's best interest.

{¶ 27} Because an award of legal custody to a relative would not terminate Mother's parental rights, MCCS needed only to show by a preponderance of the evidence that such a disposition was in T.W.'s best interest. *In re A.K.*, 2d Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 7. The trial court concluded, however, that returning legal custody to Mother was in the child's best interest. Once again, we review that determination for an abuse of discretion. *Id.*

{¶ 28} In its decision, the trial court recited the appropriate best-interest factors under R.C. 3109.04(F)(1), which applies to legal custody determinations. In particular, the trial court noted that the pertinent factors included, but were not limited to, "the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; and the mental and physical health of all persons involved in the situation." (Doc. # 4 at 17).

{¶ 29} The trial court then reviewed the evidence as it pertained to the foregoing factors. (*Id.* at 17-19). It noted, among other things, that Mother desired to parent T.W. full time, that she had continued to visit the child throughout the pendency of the case, and that she had substantially completed her case-plan objectives and had resolved the

issues that originally led to the removal of her children. The trial court also recognized, however, that Mother's cousin wanted to keep T.W. as her own and considered the child part of her family. The trial court also acknowledged evidence that T.W. had a good relationship with Mother's cousin's family. In addition, the trial court noted testimony from Mother's cousin that T.W. had "special or medical needs" including "sickle-cell trait" and possibly asthma. Mother's cousin also testified that the child had some "separation anxiety" or "reactive attachment disorder" that was getting better. She testified that "hugging" him seemed to help. As for other assistance that T.W. needed, Mother's cousin stated that he largely got it through a special day care, which he attended 45 to 50 hours per week. MCCS caseworker Brande Knight testified that, to the agency's knowledge, T.W. did not have any special or medical needs. (*Id.* at 103). The trial court also noted that T.W. had exhibited some "behavioral issues" while in Mother's cousin's home. The trial court reviewed Mother's testimony that she had asked her cousin to help care for T.W., before MCCS became involved, because she needed assistance at that time.

{¶ 30} After reviewing the evidence, the trial court reasoned:

> The Court finds that Mother's actions over the last four years have supported her testimony that she wants to parent T.W. full time and is able to do so in a healthy manner. Mother has continued to visit with the child throughout the case, despite barriers, evidencing a continued and strong commitment to the child, contrary to the findings that Mother "continues to vacillate" about her intent to parent T.W. Alternatively, [Mother's cousin] appears intent to keep the child as her own, and testified that her family has always considered the child to be theirs. As discussed in the preceding

section, Mother has substantially completed her case plan and has largely resolved the issues that led to the removal of both of the children from her care.

The Court finds that Mother initially relied on [her cousin] because she stated that she was homeless, without a job, and not in a "good place." Mother therefore made an appropriate safety plan for her child and placed T.W. voluntarily with [her cousin]. At the time of the legal custody hearing for T.W., Mother had independent housing, displayed an ability to meet the needs of the child and herself financially, and had engaged in mental health counseling successfully for an extended period of time. Mother's visits with the child have been consistent and reportedly have gone well, albeit in a severely limited fashion for two hours at the Agency.

It was stated that Mother was consistent with her visitation. A caseworker stated that [her cousin] was cooperative with bringing the child to visits "most of the time." The testimony suggests there were a number of occasions throughout the pendency of this case that the child was not made available for the scheduled visitations. Visitation time was altered in September to better conform to [Mother's cousin's] school schedule. Mother does not believe that the Agency was as accommodating with her schedule, as there were times she would have to leave work to visit with the children.

The Court again finds that parents have a basic fundamental right, which is paramount to anything other than a child's best interest and safety, to raise their child. Although a grant of legal custody does not divest Mother

of her parental rights as fully as a grant of permanent custody would, the Court does not find it to be in the child's best interest to be deprived of being raised by their Mother given the circumstances of this case, the child's reactive attachment disorder and the progress that Mother has made over time.

After a review of the available record and consideration of the best interest factors under R.C. 3109.04(F)(1)(a-j), as well as the best interest factors under R.C. 2151.414(D)(1)(a-e), the Court concludes it is also in the best interest of T.W. to return to the legal custody of Mother. * * *

(Doc. # 4 at 20).

{¶ 31} On appeal, MCCS argues that the trial court's decision "completely disregarded" T.W.'s "special needs" including sickle-cell trait and reactive attachment disorder. MCCS also stresses the child's longstanding relationship with Mother's cousin's family. MCCS reiterates its prior arguments about Mother's case-plan progress and her attempts to remedy the agency's concerns. For these reasons, MCCS contends the trial court erred in finding an award of legal custody to Mother to be in T.W.'s best interest.

{¶ 32} Based on our review of the record, we see no abuse of discretion in the trial court's decision to award Mother legal custody of T.W. With regard to T.W.'s special needs, MCCS caseworker Knight claimed the agency was unaware of any special needs. In any event, Mother's cousin testified that the reactive attachment disorder was improving and that the best remedy was "just to hug" T.W. As for the sickle-cell trait, the record does not reveal what treatment, if any, was necessary. Although Mother's cousin testified that T.W. attended "special needs day care," nothing in the record suggests that

such attendance could not continue if necessary. With regard to T.W.'s lengthy and positive relationship with Mother's cousin and her family, the trial court considered it. The trial court also considered Mother's own relationship with her children as well as her satisfaction of her case-plan objectives. As we explained in our analysis above, the record supports the trial court's finding that Mother substantially complied with her case plan. We note again that the trial court tempered its decision to reunite Mother with her children by granting MCCS an extendable six-month term of protective supervision during which the agency could ensure that both children's needs were being met. The trial court's resolution of the best-interest issue with regard to T.W. was supported by the record and was not unreasonable, arbitrary, or unconscionable. The third assignment of error is overruled.

{¶ 33} In its fourth assignment of error, MCCS contends the trial court erred in terminating the agency's temporary custody of L.W. and T.W. and returning legal custody to Mother "without conducting additional hearings." MCCS reasons that "if the trial court was in doubt of the manifest weight of the evidence, it should have conducted additional evidentiary hearings instead of immediately sustaining Mother's objections." In particular, MCCS complains that the magistrate failed to allow the agency to make an adequate record regarding L.W.'s "health concerns." Therefore, MCCS asserts that "if the trial court had additional questions about L.W.'s care, it should have requested additional testimony[.]" MCCS also suggests that the trial court should have requested additional testimony regarding the psychological reports submitted by Dr. Bromberg and Dr. Hrinko. MCCS reasons that "[i]f the trial court is going to disregard one psychological report in favor of the other, the record must contain evidence to support such a judgment." Because

the trial court relied primarily on Dr. Hrinko's report without taking additional evidence, MCCS asserts that it acted unreasonably and created a manifest miscarriage of justice.

{¶ 34} Upon review, we find MCCS' arguments to be unpersuasive. We recognize that a trial court is authorized to hear additional testimony when reviewing objections to a magistrate's decision. Here, MCCS does not identify anywhere in the record where it asked the trial court to take additional testimony regarding L.W.'s health. In addition, nothing in the trial court's decision suggests that it thought additional testimony would have been necessary or even helpful. Contrary to the implication of MCCS' appellate brief, the trial court did not indicate that it was in doubt regarding the manifest weight of the evidence as to L.W.'s health. As for the reports submitted by Dr. Bromberg and Dr. Hrinko, we note that Dr. Bromberg's March 2016 report made numerous psychological diagnoses and recommended 24 months of counseling. Dr. Hrinko conducted his psychological evaluation nearly 18 months later, after Mother had undergone a number of counseling sessions. Dr. Hrinko found "no indications of ongoing, significant personality disorders" and "no indications that [Mother] would place her children in any risky situation or harm at this time." One reasonable explanation for the differing findings of Dr. Bromberg and Dr. Hrinko is that Mother underwent counseling and her mental condition improved by the time Dr. Hrinko evaluated her. In any event, the trial court did not abuse its discretion by failing to order additional hearings concerning Mother's mental condition or any other issue. The fourth assignment of error is overruled.

{¶ 35} The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Charles W. Slicer
Michael Morton
Brent Rambo
L.W.
T.B.
Hon. Helen Wallace