[Cite as *In re M.W.*, 2022-Ohio-2054.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: M.W., JR.                :

                                  :

                                  :    Appellate Case No. 29413

                                  :

                                  :    Trial Court Case No. G-2019-002613-0J,0N

                                  :

                                  :    (Appeal from Common Pleas Court-Juvenile Division)

                                  :

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Appellee, Montgomery County Children Services

ALANA VAN GUNDY, Atty. Reg. No. 0100651, P.O. Box 245, Bellbrook, Ohio 45305
        Attorney for Appellant, Father

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
        Attorney for Appellee, Mother

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Father appeals from the trial court's judgment entry overruling his objections to a magistrate's decision and awarding Mother legal custody of the parties' minor child.

{¶ 2} Father contends the trial court erred in finding that reunifying Mother with the child was in the child's best interest. Based on our review of the record, we see no abuse of discretion in the trial court's ruling. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 3} Montgomery County Children Services (MCCS) filed a June 2019 neglect and dependency complaint regarding Mother's two children, M.W. and G.B. At the time of the complaint, M.W. was nearly four years old and G.B. recently had turned five. Mother and Father are the biological parents of M.W. Mother's other child, G.B., has a different father. At the time of the complaint, both children resided with Mother. MCCS became involved after Mother began leaving the children with Father or other individuals unannounced for indeterminate periods of time without any reliable way for Mother to be contacted.

{¶ 4} Following an August 2019 dependency and neglect adjudication, an award of temporary custody was made to a maternal cousin. Father later obtained interim temporary custody of both children. Thereafter, Mother and Father filed competing legal-custody motions. Citing both parties' satisfaction of case-plan objectives, MCCS later moved for reunification of the children with Mother or, alternatively, an award of legal

custody to Father. The various custody motions proceeded to evidentiary hearings before a magistrate on February 11, 2021 and June 24, 2021.[1] G.B.'s biological father did not participate in the hearings. Mother, Father, and MCCS agreed to reunify G.B. with Mother. The magistrate filed an August 5, 2021 decision that also ordered Mother to be reunified with M.W. As a result, the magistrate sustained Mother's legal-custody motion and overruled Father's competing motion. Father filed objections challenging the magistrate's decision.

{¶ 5} The trial court overruled Father's objections in a February 24, 2022 final judgment entry. After conducting its own review, the trial court found that awarding Mother legal custody of M.W. was in the child's best interest. The trial court also found that MCCS had made reasonable efforts to return the child home and that those efforts had been successful. Finally, the trial court found Father entitled to parenting time. This appeal followed.

## II. Analysis

{¶ 6} Father's sole assignment of error states:

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY TO MOTHER BECAUSE MONTGOMERY COUNTY CHILDREN'S SERVICES AND THE STATE FAILED TO PROVE BY PREPONDERANCE OF THE EVIDENCE THAT LEGAL CUSTODY TO MOTHER WAS IN THE BEST INTEREST OF THE MINOR CHILD.

---

[1] The February 11, 2021 hearing actually concerned interim temporary custody, and the June 24, 2021 hearing concerned legal custody. But the magistrate and the trial court considered the testimony presented on both dates when deciding the competing legal-custody motions.

{¶ 7} Father argues that the record does not support the trial court's analysis of the statutory best-interest factors. He raises various issues, arguing that they demonstrate an abuse of discretion in the trial court's best-interest analysis.

{¶ 8} Although both parents desired custody of M.W., Father contends Mother once offered to compromise by taking custody of G.B. and giving him custody of M.W. He also notes that Mother originally abandoned both children on his doorstep, resulting in a finding of dependency and neglect. Father stresses that both children were doing well in his care, and he claims M.W. expressed a desire to live with him. Father criticizes the trial court for elevating the importance of the siblings' relationship over his own relationship with M.W.

{¶ 9} Father next asserts that the guardian ad litem recommended M.W. remain with him. He contends M.W. was bullied by G.B. and that the two children fought all the time. Father claims the trial court inappropriately found these issues to be part of a normal sibling relationship. Father notes that M.W. was doing well in school and receiving occupational and speech therapy while in his care.

{¶ 10} Father also contends Mother has a history of mental-health issues and being involved in "violent relationships" that caused fear in her children. Specifically, he cites her diagnosed history of anxiety, which once caused her to state that she would rather kill M.W. than allow the child to live with Father. Father claims Mother has a history of substance abuse as evidenced by positive tests for marijuana and cocaine. He also asserts that she expressed an intent to move to Indiana following termination of the case. Father claims he has no intent to relocate and will keep the child in the same home and

school.

{¶ 11} Father next asserts that various concerns expressed about him by MCCS or Mother were unwarranted. In particular, he denies not considering M.W.'s special needs. Father insists that he did address those needs even though they were less pronounced with the child in his care. Father notes too that his having one bedroom and bed available was not an issue given that he consented to Mother's having custody of the other child. He also discounts any concern about his prior felony domestic-violence conviction. Father notes that the conviction occurred five years before M.W. was born, that the incident did not occur in the home with Mother and the child, and that he had no subsequent criminal record.

{¶ 12} Finally, Father contends the trial court erred in not recognizing his "fundamental liberty and parental interest in the custody of his child." Father notes that he was caring for the child successfully and argues that did not "deserve" to lose "legal custody." In connection with this argument, Father reasons that the trial court did not find him to be an unsuitable parent, thereby "evincing that there was no reason that legal custody should have been removed from Father based upon suitability." That being so, he claims he "retains a paramount right to the custody his of child."

{¶ 13} When considering whether to return a child to the legal custody of a parent, courts typically look to the best-interest factors found in R.C. 3109.04(F)(1). *In re T.L.W.*, 2d Dist. Montgomery No. 28363, 2019-Ohio-3118, ¶ 28. Those factors are similar to the factors in R.C. 2151.414(D) that govern permanent custody motions, and courts sometimes apply both provisions when considering legal custody. *In re A.K.*, 2d Dist.

Montgomery No. 27575, 2017-Ohio-8100, ¶ 13-14. Unlike permanent-custody motions, an award of legal custody only needs to be supported by the preponderance of the evidence. We apply abuse-of-discretion review to a trial court's decision on a motion for legal custody. *In re J.T.*, 2d Dist. Montgomery No. 27343, 2017-Ohio-1303, ¶ 10-11.

{¶ 14} In the present case, the trial court analyzed the evidence as it related to each relevant best-interest factor in R.C. 3109.04(F)(1). With regard to the parties' wishes, the trial court noted that Mother and Father both desired legal custody of M.W. The trial court also noted that M.W., who was five years old at the time of the hearing, had not been interviewed in chambers to determine the child's wishes.

{¶ 15} As for M.W.'s interaction with parents, siblings, and other relevant people, the trial court detailed testimony from Mother and an MCCS caseworker about M.W. and G.B. being well bonded and never apart. The trial court also noted that the caseworker had no concerns about either parent but believed the children should be placed together because they never had been separated. The trial court acknowledged Father's contrary testimony that the children did not appear to be bonded and that they fought all the time. The trial court recognized Father's interim temporary custody while the case was pending. The trial court additionally noted Mother's admission about once stating she would rather kill M.W. than allow Father to have custody. The trial court observed that Mother attributed the statement to her anxiety, which subsequently had been addressed through therapy and medication.

{¶ 16} With regard to the next factor—M.W.'s adjustment to home, school, and community—the trial court cited testimony that the child was doing well in Father's interim

temporary custody. As for the mental and physical health of all involved parties, the trial court noted that M.W. was being treated for ADHD and a speech delay. The trial court cited Father's testimony that M.W. rarely "acts out" and has only a slight speech delay. Finally, the trial court recognized that Mother had been diagnosed with anxiety and was being treated for it.

{¶ 17} After reviewing the evidence and considering all of the foregoing factors, the trial court concluded:

> The evidence presented shows that both parents are able and willing to care for the child and both parents made substantial progress on their case plans. Although both parents would serve as suitable placement options for the child, the evidence shows that MW and his sister [G.B.] share a strong bond and that separating the two would be contrary to MW's best interest. As stated supra, GB was reunified with Mother. Consequently, the Court finds that legal custody to Mother is in the child's best interest and awarding Father parenting time as described herein is also in the child's best interest.

February 24, 2022 Judgment Entry at 11.

{¶ 18} Upon review, we see no abuse of discretion in the trial court's decision to reunify Mother and M.W. The record reflects that Mother had completed all of her case plan objectives, which included engaging in mental-health treatment, complying with random drug screens, obtaining and maintaining housing and employment, visiting the children, and cooperating with MCCS. Father had satisfied all of his case-plan objectives except finishing a parenting-education class, which was nearly done. Father's objectives

included complying with random drug screens, obtaining and maintaining housing and income, signing releases, cooperating with MCCS, meeting M.W.'s needs, and completing the parenting-education class. An MCCS caseworker testified that the agency was satisfied with both parties' case-plan performance, and the agency had no concerns about either parent obtaining legal custody of M.W. In choosing between the parents, the caseworker stated that MCCS was recommending legal custody to Mother to keep M.W. and G.B. together. The caseworker described the children's relationship as follows: "[T]hey love each other. They love spending time together and hanging out, um, and their relationship is just a normal sibling relationship to where they are very happy together." The caseworker added: "For how bonded these kids are, I think it would be in the[ir] best interest if they stay together."

{¶ 19} Contrary to Father's argument about the guardian ad litem's favoring his having legal custody, we note that the most recent June 7, 2021 guardian ad litem report actually recommended shared parenting with Mother being designated the custodial parent for school purposes. There is no indication of a shared-parenting proposal, however, and each parent sought sole legal custody. The guardian ad litem's report also indicated that M.W. "wants to live with his daddy, but also wants to live with [G.B.]" It was not possible, of course, for M.W. to live with Father and G.B. given that Mother had obtained legal custody of G.B.

{¶ 20} In short, the trial court faced a situation where MCCS's intervention had been successful and both parents had demonstrated an ability to obtain legal custody of M.W. The trial court recognized this fact and found that an interest in keeping M.W. and

G.B. together tipped the balance in favor of reunifying Mother with M.W. and awarding Father parenting time. On the record before us, we do not find this resolution to have been unreasonable, arbitrary, or unconscionable.

{¶ 21} Father's arguments fail to persuade us otherwise. Even if Mother once offered to compromise by taking custody of G.B. and giving Father custody of M.W., that offer was not irreversible. She plainly changed her mind and sought custody of both children. We find equally immaterial the fact that Mother previously had left the children at Father's house. Although that act had played a role in MCCS initiating dependency and neglect proceedings, the issue at the dispositional hearing was different. As for Father's claim that M.W. had been doing well in his care, the trial court did not find otherwise. The trial court explicitly considered the fact that Father had provided good care for both children while having interim temporary custody. Regarding Father's claim that M.W. desired to live with him, we note that the child was only five years old. We note too that M.W. had expressed a desire to live with both Father and with G.B. As for Father's claim about M.W. and G.B.'s fighting and not being bonded, the trial court simply credited the opposing testimony from Mother and the caseworker about the children being well bonded and having a close relationship.

{¶ 22} The trial court also considered Mother's prior relationships, and it explicitly referenced her treatment for anxiety. With regard to the relationship issue, Mother testified that the man who had been the primary source of violence was in prison and no longer with her. The trial court also had the discretion to find that Mother's anxiety was under control and being addressed. For that reason, the trial court reasonably awarded Mother

legal custody of M.W. despite her one-time statement that she would kill the child before giving Father custody. Although Mother admitted having made the statement "a long time ago," the MCCS caseworker expressed no concern about her having custody. As for Father's substance-abuse argument, the caseworker testified that Mother had a history of several months of clean drug screens and that MCCS was satisfied. The trial court also heard Father's testimony about Mother possibly moving to Indiana. For her part, Mother denied planning to move and explained that she recently had signed a new lease. We note too that the trial court did not base its legal-custody decision on any of the perceived concerns about Father that his appellate brief addresses. Instead, the trial court primarily based its decision on a desire to keep M.W. and G.B. together.

{¶ 23} Finally, we find misplaced Father's complaint about the trial court not recognizing his "fundamental liberty and parental interest in the custody of his child." Father's interest in having custody of M.W. was no greater than Mother's identical interest. As for Father's complaint about not "deserving" to lose "legal custody," we note that he had interim temporary custody pending a final disposition. The trial court was not required to find him to be an "unsuitable parent" before awarding Mother legal custody. The issue before the trial court was whether it was in M.W.'s best interest to award Mother or Father legal custody. The trial court did not abuse its discretion in reunifying Mother with M.W. and awarding her legal custody.

### III. Conclusion

{¶ 24} Father's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Alana Van Gundy
Robert Alan Brenner
Kelly M. Schroeder
Hon. Anthony Capizzi