OPINION
{¶ 1} Appellant Stacy Starks appeals the decision of the Darke County Court of Common Pleas, Juvenile Division, which granted legal custody of Starks' daughter, Kaylee Starks/Hines (hereinafter "Kaylee"), to Shanna and Patrick Hines. Starks contends the trial court erred when it found by clear and convincing evidence that it would be in the best interests of Kaylee to be placed in the legal custody of the Hines. Moreover, Starks asserts that the trial court erred when it found by clear and convincing evidence that she had failed to remedy the conditions that resulted in Kaylee originally being removed from Starks' home and that she did not substantially comply with specific court orders aimed at facilitating a reunification with Kaylee. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} Kaylee was born on March 21, 2002, and is the minor child of appellant Stacy Starks and James Hines.
 {¶ 3} On September 5, 2002, Darke County Children's Services (hereinafter "CSU") filed a complaint alleging Kaylee to be an "abused" child pursuant to R.C. § 2151.031(C), after it was discovered that both of Kaylee's legs were fractured while in the custody of Starks and her live-in boyfriend Benjamin Wilkerson. Neither Starks nor Wilkerson offered any explanation or accepted any responsibility for Kaylee's injuries.
 {¶ 4} The CSU filed a Motion for Temporary Disposition and Ex Parte Order contemporaneously with the complaint in which they requested that Kaylee be placed in their temporary custody, which she was. On November 25, 2002, the trial court adjudged Kaylee to be an "abused" child and ordered Stacy Starks and James Hines to complete parenting training. The court also ordered Starks to commence counseling at the Darke County Mental Health Clinic, obtain a medical assessment, and pay child support at the rate of $50.00 per month. Kaylee was to remain in the temporary custody of CSU.
 {¶ 5} After a hearing held on March 6, 2003, the trial court placed Kaylee in the custody of James Hines, her natural father. With respect to Starks, the court ordered that she have no contact with Ben Wilkerson, continue to attend counseling once a week, and provide CSU with her financial information for the calculation of child support. Subsequently, on May 27, 2003, the court ordered that Starks' child support payments be increased from $50.00 to $165.61.
 {¶ 6} At a review hearing on June 23, 2003, the trial court became aware that James Hines had been charged with a DUI while Kaylee was in the motor vehicle. James Hines was also charged with a probation violation. In response to this information, the trial court placed Kaylee in the temporary custody of her paternal aunt and uncle, Shanna and Patrick Hines. With respect to Starks possible future reunification with Kaylee, the court ordered her to do the following: 1) obtain and maintain suitable housing; 2) obtain and maintain part-time employment as long as she was medically able to do so; 3) continue to attend and successfully complete counseling at least once a week and follow the recommendations of her counselor; 4) have no contact with Ben Wilkerson; 5) attend and successfully complete parenting classes; and 5) pay child support in the amount of $155.61, plus the 2% processing fee to Shanna and Patrick Hines, effective as of June 23, 2003.
 {¶ 7} On December, 26, 2003, the CSU filed a Motion for Legal Custody of Kaylee Hines to Shanna and Patrick Hines pursuant to R.C. § 2151.415(A). On March 22, 2004 and March 23, 2004, the trial court conducted a hearing with respect to said motion wherein the court concluded that it was in Kaylee's best interests to grant legal custody to Shanna and Patrick Hines, her paternal aunt and uncle. The trial court set forth its findings of fact and conclusions of law in a Journal Entry filed on May 11, 2004. It is from this judgment that Starks now appeals.
 II {¶ 8} Starks appeals from the ruling of the trial court granting legal custody of Kaylee to Shanna and Patrick Hines. In her brief, Starks presents four assignments of error for our review. Because the first and fourth assignments of error are intertwined, we will address these assignments simultaneously:
 {¶ 9} "The trial court erred when it found clear and convincing evidence that the concerned child could not safely be returned to appellant's custody."
 {¶ 10} "The trial court's ultimate award of legal custody was against the manifest weight of the evidence."
 {¶ 11} Initially it should be noted that there appears to be a some confusion regarding the correct burden of proof to be utilized in a legal custody case brought pursuant to R.C. § 2151.415(A)(3). In the case before us, the trial court used the clear and convincing standard when it weighed the evidence and made the decision to grant legal custody to Shanna and Patrick Hines.
 {¶ 12} R.C. § 2151.011(B)(19) defines "legal custody" as the following:
 {¶ 13} "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the of the Revised Code or by the court."
 {¶ 14} Appellee CSU, however, points out that at least one appellate jurisdiction has held that the correct standard of review in a legal custody dispute is a preponderance of the evidence. In re Nice (2001),141 Ohio App.3d 445. The Seventh District reasoned that legal custody is not as drastic a remedy as a grant of permanent custody, where parental rights are terminated. Id., See R.C. 2151.011(B)(30). The natural parents, like those in the case before us, retain residual parental rights, such as visitation.
 {¶ 15} Thus, when determining whether or not to grant an individual or couple legal custody of a dependent child, a court can do so if it finds by a preponderance of the evidence that it is in the best interests of the concerned child. Preponderance of the evidence simply means "evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it." Black's Law Dictionary (6th Ed. 1998) 1182. The clear and convincing evidence standard is a higher degree of proof than the preponderance of the evidence standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Clear and convincing evidence is that which produces in the mind of the trier of fact a firm belief or conviction in the proposition sought to be established. In the Matterof: Shawn O'Neal Rachel O'Neal (November 20, 1998) Clark App. No. 97-CA-91, 97-CA-87 97-CA-88, citing In re Weaver (1992),79 Ohio App.3d 59, 64.
 {¶ 16} As previously stated, the trial court found by clear and convincing evidence that legal custody of Kaylee was to be awarded to Shanna and Patrick Hines. In doing so, the trial court used a higher burden of proof than was necessary given the fact neither Starks' residual parental rights nor the natural father's rights were being terminated. Despite this fact, we conclude that the use of the incorrect standard was clearly harmless error on the part of the trial court, and we will proceed with an analysis of Starks' assignments of error.
 {¶ 17} On appeal, we will not reverse an award of legal custody absent an abuse of discretion. Nice, 141 Ohio App.3d at 445, 751 N.E.2d 552. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. If the court's decision on the child's best interest regarding legal custody is not supported by competent, credible evidence, then it is unreasonable, and we may reverse it. Nice at 445. However, "the discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 18} As explained in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, the standard for assessing manifest weight is as follows:
 {¶ 19} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury (factfinder) clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 20} Starks contends that much of the testimony offered at the hearing contradicts the trial court's decision that Kaylee could not safely be returned into her custody. In support of this contention, Starks highlights certain portions of testimony adduced at the hearing which she argues demonstrate that she should have been granted custody of Kaylee.
 {¶ 21} After a thorough review of the transcript of the hearing, the portions of testimony Starks brings to our attention, indicate, at best, that she was making some attempt to abide by the case plan ordered by the trial court. The testimony she cites in her brief, however, is mainly taken out of context when the record is viewed in its totality.
 {¶ 22} Based on continuous interaction with the affected parties, Kay Robbins, Kaylee's guardian ad litem, recommended that legal custody be granted to Shanna and Patrick Hines. James Hines, Kaylee's natural father, testified that he agreed that legal custody should be granted to Shanna and Patrick Hines.
 {¶ 23} Dr. Mary Hollenkamp Ramey, a psychologist for the Darke County Mental Health Clinic testified that in light of the results of a psychological examination performed on Starks in December of 2003, Starks was under a great deal of stress and was at risk for engaging in physical and psychological abuse with her own children. In addition, testimony was presented at the hearing which indicates that Kaylee had bonded with Shanna and Patrick Hines while in their temporary custody, and that Kaylee was doing extremely well under their care and supervision.
 {¶ 24} Numerous witnesses also testified that Starks had failed to discontinue her contact with Benjamin Wilkerson, who was alleged to have played a role in the initial abuse Kaylee suffered. Witnesses reported seeing them together on many occasions, and Starks' aunt, Teresa Baker, testified that based on her observations, she believed Starks and Wilkerson were still living together in direct violation of the court order. When confronted with these questions involving their continued involvement, Starks testified that everyone who reported seeing them together were either lying or simply mistaken.
 {¶ 25} On balance, we find that the trial court did not abuse its discretion when it determined by clear and convincing evidence that legal custody be granted to Shanna and Patrick Hines. In light of the results of Starks' psychological evaluation, as well as her alleged refusal to sever contact with the individual suspected of abusing her child, the trial court's decision to deny custody to Starks was not against the manifest weight of the evidence.
 {¶ 26} Starks' first and fourth assignments of error are overruled.
 III {¶ 27} Starks' second assignment of error is as follows:
 {¶ 28} "The trial court erred in determining that appellant has not substantially complied with the case plan."
 {¶ 29} In her second assignment, Starks contends that the trial court erred when it found that she had not substantially complied with the case plan. CSU argues that the evidence presented at the hearing clearly demonstrates that Starks did not substantially comply with the case plan and the corresponding court orders. In their brief, CSU frames the issue as not whether a parent has substantially complied with the case plan, but rather, did the parent substantially remedy the conditions that initially caused the dependent child to be removed from the home.
 {¶ 30} The court ordered case plan required that Starks do the following: 1) obtain and maintain suitable housing; 2) obtain and maintain part-time employment as long as she was medically able to do so; 3) continue to attend and successfully complete counseling at least once a week and follow the recommendations of her counselor; 4) have no contact with Ben Wilkerson; 5) attend and successfully complete parenting classes; and 6) pay child support in the amount of $155.61, plus the 2% processing fee to Shanna and Patrick Hines, effective as of June 23, 2003.
 {¶ 31} Although the record indicates that Starks did obtain and maintain suitable housing as well as complete the requisite parenting classes, ample evidence was presented that demonstrated her noncompliance with the orders of the court. Starks testified herself that she did not obtain and maintain part-time employment when she was medically able to do so. She also testified that as of the date of the hearing, she had not paid any child support on behalf of Kaylee. With respect to the counseling she was to receive, testimony was adduced that demonstrated that she attended the appointments only sporadically over the course of one year and still had unresolved issues concerning her impulse control and self-esteem. Dr. Ramey testified that her failure to address these issues would negatively impact her ability to raise her daughter. Lastly, and most distressing to us, was testimony that Starks had failed to discontinue her relationship with Ben Wilkerson, who was suspected of abusing her daughter. This relationship continued despite a court order to the contrary.
 {¶ 32} In light of the foregoing, we find that the trial court had ample evidence to conclude that Starks failed to substantially comply with the case plan.
 {¶ 33} Starks' second assignment of error is overruled.
 IV {¶ 34} Starks' third assignment of error is as follows:
 {¶ 35} "The trial court erred in determining the best interests of the child, both generally and under ohio revised code section 2151.414(D)."
 {¶ 36} In her third and final assignment, Starks contends that the trial court erred when it found that it would be in the best interests of Kaylee pursuant to the factors listed in R.C. § 2151.414(D), to grant legal custody of the child to Shanna and Patrick Hines. We disagree.
 {¶ 37} It is well settled that the primary, if not only, consideration in the custodial disposition of children's cases is the best interests and welfare of the child. Kurtz Gianelli, Ohio Juvenile Law (1989) 167, Section 13.01. In determining the best interests of Kaylee, the trial court used the factors listed in R.C. 2151.414(D), the same factors utilized in permanent custody cases. The statute states in pertinent part:
 {¶ 38} "In determining the best interest of a child ____ the court shall consider all relevant factors, including but not limited to, the following:
 {¶ 39} "1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 40} "2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 41} "3) The custodial history of the child, including whether the child has been in the temporary custody of one or ore children's services agencies ____
 {¶ 42} "4) The child's need for a legally secure placement____"
 {¶ 43} Kaylee was removed from Starks' home when she was five months old upon discovery of physical injuries. As of the date of the hearing, Kaylee had lived outside her mother's home for eighteen months, nine of those months having been spent with CSU and the remaining nine months in the temporary custody of Shanna and Patrick Hines. Kay Robbins, Kaylee's guardian ad litem, strongly recommended that legal custody be granted to Shanna and Patrick Hines. The trial court also found that Kaylee was in need of a legally secure placement which could not be achieved without a grant of legal custody to the Hines'. The trial court based this conclusion on the fact that at the time of the hearing, James Hines, the natural father, was incarcerated, and Starks had failed to remedy the conditions that resulted in Kaylee originally being removed from her home. Lastly, ample testimony was adduced at the hearing that demonstrated that Shanna and Patrick Hines had bonded with Kaylee and were more than willing to provide a stable and financially secure home for the child. The trial court clearly had an adequate basis to find that it was in Kaylee's best interests to be placed in the legal custody of Shanna and Patrick Hines.
 {¶ 44} Starks' final assignment is hereby overruled.
 V {¶ 45} All of Starks' assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.