[Cite as *In re J.M.*, 2020-Ohio-822.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: J.M. | : | |
|  | : | |
|  | : | Appellate Case No. 28508 |
|  | : | |
|  | : | Trial Court Case No. 2015-2833 |
|  | : | |
|  | : | (Appeal from Common Pleas |
|  | : | Court – Juvenile Division) |
|  | : | |
|  | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Appellee, MCCS

KELLY M. SCHROEDER, Atty. Reg. No. 0080637, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
     Attorney for Appellant, Mother

. . . . . . . . . . . .

HALL, J.

{¶ 1} K.M. ("Mother") appeals from the trial court's order overruling her objections to a magistrate's decision and awarding legal custody of her child to the child's paternal aunt and uncle.

{¶ 2} In her sole assignment of error, Mother challenges the trial court's decision to award legal custody to the paternal aunt and uncle.[1] She argues that the trial court abused its discretion and that the disposition was not in the child's best interest.

{¶ 3} The record reflects that appellee Montgomery County Children Services ("MCCS") filed a dependency complaint in May 2015 concerning Mother's child, J.M., who was then eight months old. The complaint alleged that a sibling had been adjudicated neglected and dependent and that J.M.'s father had been convicted of child endangerment in March 2015. The complaint further alleged that Mother had been hospitalized due to complications from her pregnancy with J.M., that she was staying in a residential rehabilitation center, and that she had not been home since mid-August 2014. (Doc. # 186.)

{¶ 4} The trial court adjudicated J.M. dependent and awarded temporary custody to the child's paternal aunt. (Doc. # 164.) Following an extension of temporary custody, MCCS moved for legal custody to the paternal aunt and uncle in September 2016. (Doc. # 106.) The trial court overruled that motion and entered a second extension of temporary custody. (Doc. # 81-82.) In March 2017, MCCS again moved for legal custody to the paternal aunt and uncle. (Doc. # 76.) Following a two-day hearing, a magistrate filed a September 2017 decision sustaining the motion and awarding paternal aunt and uncle

---

[1] With legal custody, Mother retains certain residual rights and the award may be subject to modification in limited circumstances. *See, e.g., In re J.R.P.,* 2018-Ohio-3938, 120 N.E.3d 83, ¶ 55 (7th Dist.).

legal custody of J.M. (Doc. # 51.) Mother filed objections and then supplemental objections to the magistrate's decision with citations to a hearing transcript. (Doc. # 16.) In an August 13, 2019 order, the trial court overruled all of Mother's objections. In its lengthy ruling, the trial court set forth the testimony presented to the magistrate and aligned it with the pertinent statutory best-interest factors. The trial court then found, by a preponderance of the evidence, that awarding legal custody to J.M.'s paternal aunt and uncle was in the child's best interest. (Doc. # 3 at 18.) This appeal followed.

{¶ 5} In her assignment of error, Mother primarily challenges the trial court's best-interest determination. She engages in her own analysis and weighing of the best-interest factors in R.C. 3109.04(F)(1), arguing that those factors support returning custody to her. (Appellant's brief at 13-17.) Mother asserts that "the only reason" for not returning J.M. to her is the child's bond with the paternal aunt and uncle. Mother stresses that she too is bonded with the child and that she only lost custody after suffering a long-term, debilitating illness. Finally, Mother argues that the trial court's decision was erroneous "as a matter of law" because "it is devoid of any viable findings of facts, a best interest of the child analysis, or conclusions of law." (*Id.* at 17.)

{¶ 6} The law governing the trial court's legal-custody determination and our review of that decision is as follows:

R.C. 2151.353(A)(3) provides that if a child is adjudicated a dependent child, the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" An award of legal custody "vests in the custodian the right to have physical care and control of the

child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19).

When a juvenile court makes a custody determination under R.C. 2151.353, it must do so in accordance with the "best interest of the child" standard set forth in R.C. 3109.04(F)(1). *See In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589, 1992-Ohio-144, paragraph two of the syllabus, and R.C. 2151.23(F)(1) (requiring a juvenile court to exercise its jurisdiction in accordance with R.C. 3109.04 as well as other sections of the Ohio Revised Code). The factors a court must consider in determining a child's best interest include such things as the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interes[t]; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons. R.C. 3109.04(F)(1)(c). * * *

"[W]hen determining whether or not to grant an individual or couple legal custody of a dependent child, a court can do so if it finds by a preponderance of the evidence that it is in the best interes[t] of the concerned child. Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " (Internal citations omitted.) *In re A.W.*, 2d Dist.

Montgomery No. 21309, 2006-Ohio-2103, ¶ 6, citing [*In re K.S.*], 2d Dist. Darke No. 1646, 2005-Ohio-1912.

We review the trial court's judgment for an abuse of discretion. *See In re C.F.*, 113 Ohio St.3d 73, 83, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 48 (applying abuse of discretion standard to trial court's findings under R.C. 2151.414); *In re A.M.*, 2d Dist. Greene No. 2009 CA 41, 2009-Ohio-6002, ¶ 9. Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*In re D.S.*, 2d Dist. Clark No. 2013 CA 51, 2014-Ohio-2444, ¶ 8-11.

{¶ 7} With the foregoing standards in mind, we turn first to Mother's argument about the trial court's decision being erroneous "as a matter of law" because it lacks findings of facts, a best-interest analysis, or conclusions of law. We find this argument to be without merit. The case came before the trial court on objections to a magistrate's decision, which itself contained designated "findings of fact" and "conclusions of law." (Doc. # 51 at 2-5.) Under Civ.R. 53(D)(4)(d), the trial court's obligation was to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." The trial court satisfied this requirement. In its ruling, the trial court independently reviewed the record, including hearing transcripts and the magistrate's opinion. After engaging in its review, the trial court adopted the magistrate's decision, which included the aforementioned findings of fact and conclusions of law. The trial court also conducted its own analysis, which included 15 single-spaced pages devoted to reviewing the evidence as it related to

each statutory best-interest factor. (Doc. # 3 at 3-17.) Although much of that analysis involved summarizing witness testimony, it also contained what appear to be numerous factual findings by the trial court relevant to the best-interest issue. (*Id.*) In any event, with regard to the best-interest factors, we note that the trial court was not required to make its own specific findings. It was required only to "consider" the best-interest factors. *In re M.W.*, 2d Dist. Montgomery No. 28440, 2019-Ohio-5012, ¶ 6 ("Although the trial court did not explicitly match each best-interest factor to the evidence pertaining to it, the trial court had no such obligation. The record need only reflect that the trial court 'considered' the applicable best-interest factors."). The record demonstrates that the trial court satisfied this obligation. As for "conclusions of law," the trial court also expressly found that awarding custody to J.M.'s paternal aunt and uncle was in the child's best interest.

{¶ 8} On the merits of the best-interest issue, the hearing testimony reflects that MCCS initially became involved in May 2014 after a domestic-violence incident involving Mother and Father. That case was closed based on a report by Mother that she was obtaining a restraining order, that Father was out of the house, and that they were filing for divorce. Thereafter, Mother collapsed in September 2014 shortly after giving birth to J.M. She was hospitalized and diagnosed with posterior reversible encephalopathy syndrome, which produced coma-like symptoms. Mother initially was not expected to survive. For approximately the first nine months of J.M.'s life, Mother was in the hospital and then a nursing home. In connection with Mother's illness, J.M. was placed in the temporary custody of the child's paternal aunt. At the time of the 2017 hearing, J.M. was approximately two years and nine months old and had lived with the paternal aunt and uncle since she was about six months old. J.M. was happy and well bonded with paternal

aunt and uncle and their children. J.M. also visited and was bonded with a sibling who was in the custody of J.M.'s maternal aunt. A third sibling was in the custody of J.M.'s paternal grandmother.

{¶ 9} When MCCS opened the present case, Mother's primary case-plan objective was to work with her medical providers to make progress recovering physically and cognitively. As Mother's condition improved and she was able to do more, her case plan was amended to include goals such as attending medical and mental-health evaluations and appointments, visiting J.M., obtaining and maintaining housing and income, exhibiting an ability to care for J.M., exhibiting an ability to perform day-to-day tasks for herself, demonstrating an ability to keep herself in healthy relationships, and other things.

{¶ 10} At the time of the legal-custody hearing, Mother had made significant progress in most of the foregoing areas, causing the trial court to find that she "has completed most of her case plan." The trial court's detailed analysis of the case-plan objectives (Doc. # 3 at 12-16) reveals that Mother largely had followed through with her medical appointments, evaluations, and assessments. Mother also had been visiting J.M. independently, but with supervision, at Erma's House. The visits had been going well, but a caseworker expressed concerns about Mother tiring and being able to keep up with the child. As for housing, the trial court characterized Mother's two-bedroom apartment as "safe and appropriate." Although Mother's condition did not yet allow her to return to her former job, the trial court noted that she had sufficient income through Social Security. The trial court also found that for the most part Mother was caring for herself and managing her own day-to-day activities. Although Mother had been "cleared" to get a driver's license, she still relied on others for transportation and received help managing

her finances. As for Mother's relationships, the trial court expressed concern about her on-going relationship with Father. The trial court noted reports of domestic violence and Father's substance abuse and untreated mental-health issues. At the time of the hearing, Father had left the martial residence, but Mother remained in contact with him. A caseworker feared an ever-repeating cycle of fighting, alcohol abuse, and relationship turmoil. The caseworker was concerned about the impact such a stressful and frightening environment might have on J.M., who was too young to report such issues. The caseworker noted that Father had been out of the home for only one month at the time of the hearing. The caseworker also reported a pattern throughout the case involving Mother and Father separating, getting back together a short time later, and then separating again. In the caseworker's opinion, the negative relationship issues between Mother and Father had been on-going for several years and had not yet been resolved.

{¶ 11} On appeal, Mother addresses the best-interest factors under R.C. 3109.04(F)(1), which include:

(a) The wishes of the child's parents regarding the child's care;

(b) [The wishes of the child, as expressed to the trial court];

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor[.]

{¶ 12} With regard to the first factor, Mother notes that she and Father both desired custody of J.M to be granted to her. Alternatively, Mother and Father both asked for legal custody to be granted to the child's maternal aunt. The second factor does not apply because of J.M.'s age. As for the third factor, Mother cites her bond with J.M. as well as the child's bond with a sibling and relatives. Concerning the fourth factor, Mother acknowledges evidence that the child is doing well with paternal aunt and uncle. Mother contends, however, that aunt and uncle interfered with her visitation at Erma's house by returning paperwork late and missing one appointment. With regard to the next factor, the mental and physical health of all persons involved, Mother notes that she has worked hard and has made a tremendous recovery physically and cognitively. Mother contends she has not received a sufficient opportunity to show she can care for her child. As to the sixth factor, Mother notes that she consistently has visited with J.M. She again asserts that paternal aunt and uncle "interfered" with her Erma's House visitation and once missed an appointment with the guardian ad litem. Mother next notes that there was no testimony regarding child support, rendering that factor inapplicable. Finally, Mother asserts that she has completed—or substantially completed—each of her case-plan objectives despite "roadblocks" created by MCCS.

{¶ 13} Upon review, we cannot say the trial court abused its discretion in finding by a preponderance of the evidence that an award of legal custody to paternal aunt and uncle was in J.M.'s best interest. Contrary to the implication of Mother's brief, it does not

appear to us that MCCS intentionally impeded Mother's case-plan progress to undermine her efforts at reunification with her child. Rather, as Mother's condition improved and she gained the ability to do more, the agency gave her sensible case-plan goals mostly related to her ability care for J.M. We are equally unpersuaded that paternal aunt and uncle submitting paperwork late and missing one appointment with the guardian ad litem during the course of this case necessarily undermines the trial court's best-interest analysis.

{¶ 14} Nor are we persuaded by Mother's argument that "the only" reason paternal aunt and uncle were awarded legal custody was the child's bond with them. It is true that the child is extremely well bonded with aunt and uncle. J.M. began living with them around six months of age. At the time of the legal-custody hearing, the child was approaching three years old. And at the time of the trial court's ruling, the child was almost five years old. Although Mother proposed the child's maternal aunt as legal custodian, the record contains evidence that J.M. only saw the maternal aunt a few minutes each week. Mother argued, however, that granting legal custody to maternal aunt was in J.M.'s best interest because maternal aunt had legal custody of one of J.M.'s siblings. The caseworker addressed that issue and opined that the benefit to J.M. from residing with maternal aunt and a sibling would be outweighed by the harm to J.M. if she were removed from paternal aunt and uncle's care. The caseworker expressed an opinion that J.M. would not understand why she was being taken from the only family she really knew to be placed with a maternal aunt who lacked a strong relationship with the child. The caseworker also noted that J.M. continued to have regular visitation with the sibling.

{¶ 15} The trial court also reasonably could have concluded that awarding legal custody to Mother was not in the child's best interest for reasons in addition to the child's

bond with paternal aunt and uncle. Although Mother had made tremendous progress in her recovery and had completed much of her case plan, case-plan compliance is not the only consideration in a legal-custody determination:

> A parent's case-plan compliance is relevant, of course, to the best-interest determination, but it is not dispositive. *In re T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶ 13 (2d Dist.). Satisfying case-plan objectives is a means to an end, not an end unto itself. *Id.* at ¶ 12. The statutory best-interest factors may justify an award of legal custody to someone other than a parent, or even the termination of parental rights, despite a parent's completion of all case-plan objectives. *Id.* This is so because the best-interest factors encompass much more than the parent's case-plan objectives, and they do so from the perspective of the child's particular needs. In short, the focus of a best-interest analysis is on the child, not the parent.

*In re A.K.*, 2d Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 11.

{¶ 16} Here the record supports a finding that MCCS still had reasonable concerns about Mother's ability to care for J.M. independently despite her case-plan progress. At the time of the hearing, Mother still was being transported everywhere and receiving help managing her finances. Independent visits at Erma's House involving Mother and J.M. had been occurring for only about a month. In addition, the caseworker testified that one month before the hearing was the first time Mother "was actually able to sit down and follow a conversation. She wasn't reiterating the same question she had gone over * * * every single other home visit." (Tr. Vol. II at 187.) As noted above, the caseworker also

expressed concerns about Mother's repeated involvement in a volatile relationship with Father and the effect the relationship might have on J.M., who was too young to self-protect or report any problems. Although Mother and Father had been separated for about one month before the hearing, the caseworker referenced a lengthy history of domestic violence and other issues that historically recurred and never had been addressed adequately.

{¶ 17} We note too that the maternal aunt mentioned Mother still having some issues with short-term memory. (*Id*. at 276.) When maternal aunt was asked whether she would have concerns about J.M.'s sibling (who was in her legal custody) visiting Mother's apartment unsupervised, maternal aunt responded: "I think she can do it, but for a start, I would like to just supervise or—you know, because of the illness that she went through." (*Id*. at 277-278.) This testimony demonstrates that Mother's own sister shared some of MCCS's lingering concerns about Mother's ability to care for a young child independently. Finally, we note that J.M.'s guardian ad litem expressed reservations about Mother's ability to care for J.M. and recommended legal custody to paternal aunt and uncle. (Tr. Vol. II at 494-499.)

{¶ 18} Based on our review of the record, the trial court acted within its discretion in awarding legal custody of J.M. to the child's paternal aunt and uncle. The trial court thoroughly reviewed the evidence and considered the appropriate statutory factors when determining that awarding them legal custody was in the child's best interest. The trial court's resolution of the best-interest issue was supported by the record and was not unreasonable, arbitrary, or unconscionable. Accordingly, Mother's assignment of error is overruled.

{¶ 19} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck Jr.
Sarah E. Hutnik
Kelly M. Schroeder
Carl Lux
Katelynn Waldock, GAL
Laura Woodruff, GAL
L.M. & T.M.
Hon. Anthony Capizzi