[Cite as *In re A.L.M.*, 2022-Ohio-3347.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: A.L.M. & A.S. | : |
| | : |
| | :    Appellate Case No. 29472 |
| | : |
| | :    Trial Court Case Nos. G-2020-1448- |
| | :    0F, 0K; G-2020-1450-0E, 0K |
| | : |
| | :    (Appeal from Common Pleas |
| | :    Court – Juvenile Division) |
| | : |

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2022.

. . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422

     Attorney for Appellee, MCCS


P.J. CONBOY, II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
     Attorney for Appellee, Father J.N.

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
     Attorney for Appellant, Mother

TRAVIS KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton, Ohio 45402
     Attorney for Appellee, Father R.M.

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Appellant Mother appeals from the judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which awarded legal custody of her two daughters, A.L.M. and A.S., to their fathers R.M. and J.N., respectively. For the reasons that follow, the trial court's judgment will be affirmed.

## I.    Facts and Procedural History

{¶ 2} In early April 2020, Mother left three of her four young children (aged 6 years, 5 years, and 10 months) home alone all night while she evidently partied. Mother's absence was reported to Montgomery County Children Services ("MCCS"), which came and took the children. When Mother returned home the next morning, the children were gone. On April 6, 2020, MCCS filed a complaint alleging abuse, neglect, and dependency and, following hearings, interim temporary custody and then temporary custody of A.L.M. and A.S. was granted to their fathers. Criminal charges were also filed against Mother.

{¶ 3} To be reunited with her children, Mother was given a case plan with the following objectives: (1) get drug, alcohol, and mental health assessments; (2) attend all group and individual counseling and therapy sessions; (3) submit to random drug and alcohol screenings and demonstrate sobriety; (4) maintain safe and stable housing; (5) maintain verifiable income; (6) engage in weekly visitation with the children; (7) comply with all agency visits; and (8) comply with the child endangering investigation. According to testimony at trial from MCCS, Mother was mostly successful with her case plan, although there was other evidence presented to the contrary.

{¶ 4} In March 2021, the children's fathers R.M. and J.N. filed separate motions for legal custody of their daughters. Around that same time, MCCS filed a motion for

reunification, asking that Mother be given custody of her children. As a result of the competing motions, a hearing was held on June 24, 2021, at which the magistrate heard testimony from Mother, Robert Brun (MCCS caseworker), and Christine Powers, the guardian ad litem ("GAL"). The court also considered the GAL report.

{¶ 5} Even though MCCS advocated for the reunification of A.L.M. and A.S. with their mother, the magistrate followed the recommendation of the GAL and granted legal custody of the girls to their fathers on July 13, 2021. Mother filed objections to the decision, but the trial court overruled the objections and adopted the magistrate's decision.

{¶ 6} Mother has appealed and raises a single assignment of error.

## II.    Issue on Appeal

THE TRIAL COURT DID NOT ERR IN GRANTING LEGAL CUSTODY TO THE FATHERS OF A.L.M. AND A.S.

{¶ 7} Mother asserts that the juvenile court erred when it awarded legal custody to the fathers of A.L.M. and A.S. instead of reunifying the girls with her and their other siblings.

{¶ 8} If a child is adjudicated a "dependent child," the court may grant legal custody of the child "to either parent or to any other person, who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" R.C. 2151.353(A)(3); *In re M.W.*, 2d Dist. Montgomery No. 28440, 2019-Ohio-5012, ¶ 5. An award of legal custody gives the custodian the right to have physical care and control of the child, to determine where the child lives, "and the right and duty to protect, train, and discipline the child and to provide

the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19).

{¶ 9} A custody determination under R.C. 2151.353 is made in accordance with the "best interest of the child" standard described in R.C. 3109.04(F)(1). The factors which must be considered include things like the "parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and any other person who may significantly affect the child's best interest; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons." R.C. 3109.04(F)(1); *In re M.J.S.*, 2d Dist. Montgomery No. 29292, 2022-Ohio-1114, ¶ 9. Additional factors include whether the parent has failed to make child support payments; whether the parent has a criminal history involving child abuse or neglect; whether the residential parent has denied parenting time; and whether either parent plans to move outside of the state. *Id.* R.C. 2151.414(D)(1) provides a similar, non-exhaustive list.

{¶ 10} "[W]hen determining whether or not to grant an individual or couple legal custody of a dependent child, a court can do so if it finds by a preponderance of the evidence that it is in the best interes[t] of the concerned child. Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " (Citations omitted.) *In re A.W.*, 2d Dist. Montgomery No. 21309, 2006-Ohio-2103, ¶ 6, citing *In re K.S.*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15.

{¶ 11} We review the trial court's judgment for an abuse of discretion. *In re M.W.*

at ¶ 5. Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} At the June 2021 custody hearing, the magistrate first heard from Robert Brun, the MCCS caseworker, who testified on direct examination that Mother had completed treatment and parenting classes, was employed, was doing well, and had substantially completed the case plan. Accordingly, Brun stated that the position of MCCS was that reunification (with six months of protective supervision) was in the best interest of the children.

{¶ 13} On Brun's cross-examination and during Mother's testimony, however, many facts came to light that countered MCCS's position. First, Brun admitted that Mother had had several previous Children Services referrals, including one incident where she dropped a child off on her grandmother's doorstep, rang the doorbell, and then drove off; child endangering charges followed. Another referral alleged Mother was leaving the children with people (including other children) to go party. Finally, Mother was referred to Children Services in 2019 after testing positive for marijuana at the birth of her son.

{¶ 14} In addition to the many Children Services referrals, testimony was elicited that Mother had failed to follow through on treatment as required by her case plan. Testimony indicated that since September 2020, Mother had not gone to any group treatment sessions. Further, between January and April 2021, she did not attend any one-on-one sessions. And while she denied drinking alcohol during the pendency of the case (although this account was disputed in the GAL report and by the fact that she tested

positive for alcohol on June 23, 2020), she did admit to recent marijuana use and tested positive for the drug during a MCCS home visit. Finally, Mother admitted that, at the time of the hearing, she had a pending assault charge in the Vandalia Municipal Court and an active warrant that she purportedly took care of the day before the hearing.

{¶ 15} While Mother's actions alone could have been enough to lead the court to find that it was in the best interest of A.L.M. and A.S. to be placed in the legal custody of their fathers, there were also positive reports from their stays with R.M. and J.N. that supported the finding.

{¶ 16} According to the GAL report, when A.L.M. (who was six years old at the time of the custody hearing) came into the care of her father, R.M., she was significantly behind academically, could only recognize approximately half of the letters in the alphabet, and could identify even less of the associated sounds. Her kindergarten teacher was concerned and encouraged R.M. to work with A.L.M. at home to rectify the issue. R.M. took the concerns seriously and, by the end of the school year, "her academic growth took off. * * * The academic growth she has made since living with R.M. is extraordinary." GAL Report at 3. R.M. also ensured that A.L.M.'s medical needs were met. Prior to this case, A.L.M. had not been to the pediatrician since 2018 and had never been to the dentist. However, while she had been in the custody of her father, she had regular dental appointments and caught up on her vaccines. As Brun put it, A.L.M. was "thriving."

{¶ 17} As to A.S., she, too, had made significant progress while being in J.N.'s care. According to the GAL report, A.S., much like her sister, was behind in basic skills and cognition prior to living with her father. J.N., however, spent a lot of time helping A.S.

with her language development, numbers, and letters, and Brun testified that "she's come a long way" and was on track with her academic performance. Hearing Tr. at 69. In addition to "righting the ship" academically, J.N. had been able to provide a healthy home life for A.S. She had her own room, plenty of toys, and, according to the GAL report, J.N. has been saving to provide a down payment for a home in a better school district. According to Brun, "[A.S.] is thriving as well." Hearing Tr. at 12.

{¶ 18} Based on the evidence presented at trial, we cannot conclude that the juvenile court abused its discretion by granting legal custody of A.L.M. and A.S. to their fathers instead of reunifying them with Mother. Despite some acknowledged success with her case plan, Mother exhibited troubling signs that the behaviors that led to MCCS's involvement in the first place would continue. MCCS described both children as "thriving" with their fathers, and the GAL noted that both girls had good living environments and were, for the first time, having their physical and academic needs met. The trial court's decision that it was in the best interest of A.L.M. and A.S. to be in the legal custody of their fathers was not unreasonable, arbitrary, or unconscionable. Mother's assignment of error is overruled.

### III. Conclusion

{¶ 19} The judgment of the juvenile court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Robert Alan Brenner
Travis Kane
P.J. Conboy, II
Hon. Helen C. Wallace